UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Joos Electric Co., Inc.,

        Debtor.

Case No. 10-30684 (GFK)

Chapter 11 Case

**STIPULATION FOR USE OF CASH COLLATERAL AND
PROVIDING ADEQUATE PROTECTION OF SECURED PARTY'S CLAIM**

Joos Electric, a Minnesota corporation (the "Debtor"), Susan Joos (the "Guarantor") and Associated Bank, N.A. (the "Secured Party"), hereby stipulate and agree, subject to approval of this Stipulation by the Court as hereinafter set forth, as follows:

1. <u>Nature and Amount of Secured Party's Claim.</u> The Debtor, the Guarantor and the Secured Party hereby stipulate to the following facts:

    (a) Debtor is obligated to Secured Party pursuant to a Promissory Note dated June 15, 2005 in the principal amount of $280,000.00 (the "$280K Note"). As of March 1, 2010 the payoff balance due on the $280K note was $281, 067.06 plus default interest and collection costs, and accruing interest and attorneys fees. Payments of $2,323.55 per month were required by this note. The last payment Debtor made on this note was $2,323.55 on November 24, 2009; past due payments are owed to Secured Party on this note for the months of April 2009 to the present. Debtor is in default under the $280K Note. According to its terms this Note would have matured on June 15, 2010, however, as a result of the continuing defaults thereunder, Secured Party has already accelerated all amounts due and owing under the Note. The entire balance is therefore due and owing.

(b) Debtor is obligated to Secured Party pursuant to a Promissory Note dated October 23, 2006 in the principal amount of $75,000.00 (the "$75K Note"). As of March 1, 2010 the payoff balance due on the $75K note was $71,582.04 plus default interest and collection costs, and accruing interest and attorneys fees. Payments of $663.34 per month are required by this note. The last payment Debtor made on this note was $500.00 on November 24, 2009; past due payments are owed to Secured Party on this note for the months of March 2009 to the present. Debtor is in default under the $75K Note and the entire balance is now due and owing.

(c) Debtor is obligated to Secured Party pursuant to a Promissory Note dated November 9, 2008 in the principal amount of $150,000.00 (the "$150K Note"). As of February 25, 2010 the payoff balance due on the $150K Note was $157,721.87 plus default interest and collection costs, and accruing interest and attorneys fees. The last payment Debtor made on this note was $500.00 on November 24, 2009. According to its terms the entire Note amount became due and payable on November 13, 2009. Secured Party has not agreed to extend payment terms on this note or to renew the obligation and has demanded payment in full of the entire note amount. Debtor is in default under the 150K Note.

(d) To secure the obligations of the $280K Note, the $75K Note and the $150K Note, or their predecessor obligations to Secured Party, the Debtor executed two (2) mortgages in favor of Secured Party Bank encumbering certain real property owned by the Debtor located at 3010 Lunar Lane, Eagan, Minnesota (the "Eagan Property") legally described as follows: legally described as Lot 2, Block 1, Burrows Addition, Dakota County, State of Minnesota and as shown on Torrens Certificate No. 135185 in

the office of the Dakota County Registrar of Titles. Specifically, on or about July 28, 2004, the Debtor executed a mortgage in favor of Secured Party in the principal amount of $450,000.00 which was recorded with the Dakota Registrar of Titles on February 9, 2005 as Document No.: T558641. On or about October 23, 2006, the Debtor executed a mortgage in favor of Secured Party in the principal amount of $75,000.00 which was recorded with the Dakota County Registrar of Titles on December 27, 2005 as Document No.: T603236.  Debtor has failed to make real estate payments due on the Eagan Property for 2007 and 2008 in an amount exceeding $12,000.00.

(e) To further secure the obligations of the $280K Note, the $75K Note and the $150K Note, or their predecessor obligations to Secured Party, the Debtor executed two (2) Commercial Security Agreements, on October 9, 2003 and October 9, 2004 respectively, in favor of Secured Party Bank encumbering and granting a security interest in all property owned by the Debtor including, but not limited to,

> "all inventory, equipment, accounts, ....... chattel paper, instruments (including .... promissory notes), letter of credit rights, ... documents, .... deposit accounts, investment property, money, other rights of payment and performance and general intangibles, .... whether now existing or hereafter arising, whether now owned or hereafter acquired,... and all products and proceeds ... of or elating to the foregoing property."

(the "Security Agreements"). These security interests were duly perfected through the filing of a UCC Financing Statement with the Minnesota Secretary of State on October 20, 2003 as Document No. 20039133027. A continuation financing statement was filed on August 6, 2008 as Document No. 20081277484, and an amendment thereto was filed on August 7, 2008 as Document No. 20081278440 (the "Financing Statements").  The three Promissory Notes, Mortgages, Security Agreements and other documents

3

evidencing the loan obligations of the Debtor and Guarantor are cumulatively referred to as the "Loan Agreements".

(f) To further secure the obligations of the $280K Note, the $75K Note and the $150K Note, Guarantor granted to Secured Party a junior mortgage in property located in Cross Lake, Minnesota ("Cross Lake Property"). Guarantor has failed to make real estate tax payments due on the Cross Lake Property for 2008 in an amount exceeding $7,000.00.

(g) But for the filing of the case and the imposition of the automatic stay, payment of the Secured Party's Claim is absolutely and unconditionally due and payable by the Debtor, without defense, offset or counterclaim, and the Debtor waives and releases any right to object to the allowance of the Secured Party's Claim.

(h) The Guarantor irrevocably, absolutely and unconditionally guaranteed the due and punctual payment, observance and performance by the Debtor of all monies due and to become due to the Secured Party and all other obligations and liabilities of the Debtor under the Loan Agreements. The obligations and liability of the Guarantor are direct and without regard to the obligations of the Debtor and are absolutely and unconditionally due and payable by the Guarantor, without defense, offset or counterclaim, and the Guarantor waives and releases any right to object to the allowance of the Secured Party's Claim or her obligations thereon.

(i) The Secured Party's Claim is secured by a first priority security interest in all collateral security granted to the Secured Party pursuant to the Security Documents and all other documents given by the Debtor in favor of the Secured Party, including, without limitation, all accounts, chattel paper and

electronic chatter paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter-of-credit rights, letters of credit, all sums on deposit in any bank account (as defined in the Loan Agreements), and any items in any lockbox; together with (i) all substitutions and replacements for and products of any of the foregoing, (ii) in the case of all goods, all accessions, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any goods, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods, (v) all collateral subject to the Lien (as defined in the Credit Agreement) of any Security Document, (vi) any money, or other assets of the Debtor that now or hereafter come into the possession, custody, or control of the Secured Party, and (vii) all proceeds and products of such collateral security acquired by the estate created by the Debtor's Case (the "Estate") after the commencement of the Case (such collateral security, proceeds and products are herein called the "Prepetition Collateral").

(j)    The Debtor and Guarantor agree that they shall not contest the validity, priority, extent, perfection and enforceability of the Loan Agreements, and in executing this Stipulation shall be deemed to have waived and released any right to object thereto.

2.    <u>Use of Collateral.</u>

(a)    The Debtor stipulates and agrees that, other than as permitted herein, prior to the termination of this Stipulation, it: (i) will not without prior written consent of the Secured Party engage in (A) any use of cash collateral of the Secured Party except as permitted herein, or (B) any use, sale or lease of Prepetition Collateral other

than in the ordinary course of business unless a court order is entered permitting such use, sale or lease outside the ordinary course; and (ii) will keep insured and properly care for all tangible Prepetition Collateral and real estate as provided in the Loan Agreements and the documents related thereto.

      (b)    The Debtor shall be authorized to use cash collateral for the payment of its usual, customary and necessary post-petition expenses incurred in the Debtor's business as set forth in the Debtor's cash flow attached hereto as "Exhibit A" (the "Budget") or as authorized herein and not otherwise. Such authorization shall continue for a period extending to and including April 15, 2010, at which time the Secured Party's consent to the use of cash collateral shall expire, and the Secured Party shall have with respect to the use and disposition of property of the Estate the rights and duties imposed by the Bankruptcy Code and any order of the Court, provided that such expiration shall not affect any rights or liens in the property of the Estate granted to the Secured Party during the period this Stipulation is in effect. The Debtor will comply with the Budget within a ten percent (10%) variance for any line item in the Budget. The Debtor and the Secured Party may agree to modifications of the Budget and such budget as modified shall constitute the Budget for purposes of this Stipulation.

3.    <u>Payment and Disbursement of the Secured Party's Cash Collateral</u>. All cash proceeds of Prepetition Collateral and Secured Party's Post-Petition Collateral (as defined below) shall be deposited in the Debtor's bank account at Associated Bank. Debtor shall use the Associated Bank accounts exclusively and shall not make deposits at any other bank account.

4.  <u>Adequate Protection</u>.  In consideration for the Secured Party's consent to the Debtor's use of the cash collateral as provided herein and as adequate protection for any diminution in the value of the Secured Party's Prepetition Collateral, Debtor:

(a)  hereby grants to the Secured Party a lien on and security interest in all present and future property of the Estate, whether now held or hereafter acquired by the Estate, including, without limitation, any and all acquired assets and real and personal property, but excluding the Debtor's causes of action and avoidance rights under Sections 544, 545, 547, 548, 549 or 553 of the Bankruptcy Code (all herein referred to as the "Secured Party's Post-Petition Collateral"). Such lien and security interest granted in this subsection shall have priority over all other liens, claims and expenses, including administrative expenses, in the Debtor's Case, except all other unavoidable security interests or liens in equipment or real estate of the Debtor which were duly perfected on the date of commencement of the Debtor's Case or may be perfected under Bankruptcy Code section 546(b); <u>provided, however,</u> the Secured Party shall be entitled to challenge whether any such security interests or liens have been duly perfected. Upon entry of this Stipulation, the post-petition security interests and liens granted hereunder shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the petition date without the necessity of the Secured Party taking any further action. The Secured Party may, however, at its option, file continuation statements, financing statements or such documents as it deems necessary to evidence the security interests in the Secured Party's Post-Petition Collateral. Upon request by the Secured Party, Debtor shall execute and deliver any and all

such documents, or financing statements, as are necessary to effect and perfect the Secured Party's security interests as set forth in this paragraph.

(b) shall provide weekly adequate protection payments to the Secured Party of (i) $ 850.00 per week to be first applied to accrued interest costs and fees; such weekly payments to be paid on Monday of each week starting immediately; and (ii) any Excess Funds (as hereafter defined) deposited in the bank account and not otherwise used to pay expenses set forth in the Budget for that month, which payments shall not be subject to objection, offset, defense or counterclaim of any kind. The Secured Party shall be entitled to withdraw Excess Funds or funds to be paid to Secured Party hereunder in the bank without obligation to notify the Debtor prior to withdrawing and applying such funds. Excess Funds shall be defined as funds in the account in excess of total amount needed to satisfy the Budget requirements for two months. Excess Funds shall be calculated at any time Debtor deposits more than $40,000.00. Debtor understands and agrees that it may make payment on invoices only as set out in the Budget, and that it is not authorized to prepay future obligations or pay other expenses it may categorize as business expenses but which are not on the Budget. The amount to be paid Secured Party is as set forth above, not as set out in the Budget. All other payments shall be made according to the Budget. All such amounts paid to the Secured Party shall be applied to the Secured Party's Claim, which shall include post-petition amounts that may be added to the Secured Party's Claim under section 506(a) of the Bankruptcy Code.

5. Events of Default. "Event of Default", wherever used herein, means any one of the following events, unless waived in writing by the Secured Party:

(a) Any of the Secured Party's collateral is converted by the Debtor or the Guarantor, is lost or stolen in any material amount, or is not accounted for by the

Debtor;

(b) The Debtor fails to pay any cash proceeds of the Secured Party's collateral to the Secured Party as herein provided or otherwise fails to make any payment required hereunder, including adequate protection payments to the Secured Party;

(c) The order entered by the Court approving the terms of this Stipulation, or any subsection or portion thereof, shall be vacated, reversed, or modified;

(d) The Debtor fails to comply with any of its obligations under the Bankruptcy Code or other applicable law (unless compliance with such law is suspended by operation of the Bankruptcy Code), and such failure is not corrected in 15 days;

(e) The Debtor fails to allow the Secured Party to conduct its customary audits of the Secured Party's collateral during regular business hours or have an auditor of the Secured Party on the Debtor's premises, or, within 5 business days of any request, the Debtor fails to provide the Secured Party with access to the Debtor's management, personnel or advisors;

(f) The Debtor fails to timely deliver to Secured Party the reports required under paragraph 7 hereof;

(g) The Guarantor fail to timely deliver to Secured Party the financial statements required under paragraph 8 hereof;

(h) The automatic stay is terminated with respect to any other party permitting that party to proceed against any assets of the Debtor that would have a material adverse effect on the business, operations, property, assets or condition, financial or otherwise, of the Debtor, or the Debtor assumes or rejects any executory

contract, which the Secured Party determines in its sole discretion to have an adverse impact on the Debtor's business or the Estate or the Secured Party;

(i) The Debtor's Case shall be dismissed or converted to a chapter 7 case;

(j) Appointment of a trustee or examiner with expanded powers under 11 U.S.C. § 1104;

(k) The Debtor fails to pay, when due, the administrative expenses incurred in its case or shall otherwise fail to have sufficient cash available to it to conduct its business;

(l) The Debtor or the Guarantor shall fail to perform or breach any representation, warranty, covenant or agreement set forth in this Stipulation; or

(m) Other than an action initiated pursuant to paragraph 1(e) hereof, the institution of any judicial proceeding by or on behalf of any other person that challenges the validity of any portion of the Loan Agreements or the applicability or enforceability thereof or that seeks to void, avoid, limit or otherwise adversely affect any security interest created by or in relation to the Credit Agreement or Security Documents or any payment made pursuant thereto.

6. <u>Secured Party's Remedies</u>. Upon the occurrence of an Event of Default during the term of this Stipulation and upon five business days notice to the Debtor, which notice shall be effective if given by email to the Debtor's counsel, the Secured Party shall be entitled to file a motion with the Court for relief from the automatic stay imposed under section 362 of the Bankruptcy Code. The motion for relief from stay shall be served as required by the applicable rules. Authority to use cash collateral shall terminate automatically upon Debtor's receipt of a notice of Event of Default from the Secured Party. This Stipulation

shall in no way effect Secured Party's right to file a Motion for Relief from Stay.. Debtor's only defense to a Motion for Relief from Stay shall be that it has fully complied with its obligations under this Stipulation and the Loan Agreements.

7. <u>Reporting</u>. The Debtor will make available to the Secured Party the following items:

(a) weekly, (i) collection reports of accounts receivable and cash sales; (ii) a listing of new accounts receivable, along with, at the request of the Secured Party, each receivable's invoice documentation; and (iii) a copy of all credit memorandums;

(b) weekly, a collateral report in form acceptable to the Secured Party, including an inventory report;

(c) weekly, by 4:00 p.m. on the Wednesday of the following week, a cash flow report;

(d) by March 10, 2010 agings of the Debtor's accounts receivable and its accounts payable, and a calculation of the Debtor's Accounts, Inventory, Eligible Accounts and Eligible Inventory as at the end of February;

(e) by noon on March 3, 2010, proof of insurance on all collateral, including real estate and including real estate not owned by the Debtor. Such proof shall include policy amounts, effective dates, and the coverage applicable to the Secured Party, all as acceptable to the Secured Party and as required under the Loan Agreements;

(f) by March 10, 2010, calendar year end 2009 financial statements including balance sheet and profit and loss or other income statement, and accounts receivable reports.

(g) to the extent not listed above, all information required by the Loan

11

Agreements.

8.  <u>Guarantor</u>.  Guarantor will deliver to the Secured Party, no later than March 5 2010, her current personal financial statement.

9.  <u>Reservation of Rights</u>.  Except as otherwise expressly set forth herein, the Secured Party reserves and retains all rights it may have as to the Secured Party's Claim and the Prepetition Collateral and all rights against any and all other collateral security held by the Secured Party.

10.  <u>No Further Advances.</u>  The Secured Party shall have no obligation to make further advances to the Debtor under the Loan Agreements or to otherwise extend additional credit to the Debtor.

11.  <u>Complete Agreement; Extension</u>.  This Stipulation sets forth the complete agreement of the parties. It may not be modified, waived or changed, except by a writing signed by the party to be bound thereto.  The agreement embodied hereunder shall not be extended without further Stipulation of the parties and compliance with all requirements of the Loan Agreements.

12.  <u>Binding Effect</u>.  Effective upon entry of an order of the Court approving the terms of this Stipulation and except as provided elsewhere in this Stipulation, the Stipulation is binding upon the parties and their respective successors and assigns, including but not limited to any successor entity under any plan of reorganization of the Debtor. Any trustee in this chapter 11 case or any converted chapter 7 case shall be bound by this Stipulation without prejudice, however, to such trustee's rights to challenge paragraph 1 hereof. Expiration or termination of this Stipulation shall not affect the liens granted hereunder to the extent of cash collateral used while this Stipulation is in effect. No subsequent stay, modification, termination,

failure to extend the term or vacation of the order approving this Stipulation shall affect, limit or modify the validity, priority or enforceability of any liability of the Debtor or the Guarantor under the Stipulation, or any lien or security interest granted to the Secured Party under this Stipulation. The provisions of this Stipulation dealing with the liabilities of the Debtor and the Guarantor hereunder and the Debtor's and Guarantor's payment obligations hereunder shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of Section 1129(b) of the Bankruptcy Code) in the Debtor's chapter 11 case.

13. Expenses. The Debtor agrees and the Guarantor agrees that the Secured Party may accrue and add to its secured claim all reasonable fees, charges and expenses as provided in the Loan Agreements (including, without limitation, attorney's fees and legal expenses and documented accounting, collateral examination, audit and monitoring fees), which shall be paid on a monthly basis by the Debtor without the need for filing fee or similar applications or otherwise seeking court approval.

14. Termination. Any termination of the Secured Party's consent to the use of cash collateral shall not affect any rights or the validity, priority or effect of liens in the property of the Estate granted to the Secured Party.

15. Stipulation Subject to Entry of Court Order. This Stipulation is subject to, and shall be effective only upon entry of an order of the Court authorizing the Debtor to enter into and perform this Stipulation, for which order the Debtor hereby applies to the Court.

Debtor:

JOOS Electric, Inc.

By: _____
Its: _____

Debtor's Counsel:

William Vincent, Esq.
William Vincent, P.A.
17736 Excelsior Boulevard
Minnetonka MN 55345
Tel.: 952-401-8880

13

Fax: 952-401-8889  
Email: wavpatax@aol.com

Secured Party:

Associated Bank, NA

By: _____
Its: __VICE PRESIDENT__

Secured Party Counsel:

Michael C. Glover, Esq.
Carole Clark Isakson, Esq.
Kalina Wills Gisvold & Clark PLLP
6160 Summit Drive, Suite 560
Minneapolis, MN 55430
Tel: 763- 259-3452
Fax: 763- 503-7070

Guarantor:

_____
Susan Joos

15

Secured Party:

Associated Bank, NA

By:_____
   Its:_____

Guarantor:

_Susan Joos_ (signature)
Susan Joos

Secured Party Counsel:

Michael C. Glover, Esq.
Carole Clark Isakson, Esq.
Kalina Wills Gisvold & Clark PLLP
6160 Summit Drive, Suite 560
Minneapolis, MN 55430
Tel: 763- 259-3452
Fax: 763- 503-7070